Good morning, Your Honor. Tony Farmani on behalf of Mr. Hager. Your Honor, three undisputed facts are going to determine the outcome of this appeal in favor of Mr. Hager. Number one, Mr. Hager was assured by his counsel that he would not be sentenced to the maximum term of 18 years. Number two, Mr. Hager relied on that assurance when he decided to plead guilty to the charges brought against him. And number three, contrary to the assurances, he was in fact sentenced to the 18 years. Now, when you take those... Who assured him? Who assured him that he wouldn't be sentenced? Who were you saying assured him that... Oh, his counsel assured him, Your Honor. Initially... Do you think he had reason to believe that his counsel was in a position to know, or his counsel was merely predicting? I think he had every right to rely on his counsel. Mr. Hager. All right. Let's put it another way. When we review it, do we look to see whether the counsel was in a position to know, or whether somebody in a position to know had told him that you'd only be sentenced? When you're reviewing, you should be focused on Mr. Hager's understanding. Aren't we actually looking at the State court's understanding? I mean, we're here in IDPA land, so we need to say, was the State court unreasonable in applying some Supreme Court precedent, or was its determination contrary to some Supreme Court precedent? Sure. I think the answer to that question is not as simple as it may seem, because the State court obviously didn't issue any decision. It was just summary denials. Right. But Harrington v. Richter tells us that's an adjudication on the merits. Correct. And if you look at the facts, the undisputed facts and the circumstances surrounding the guilty plea here, the fact that Mr. Hager had no prior criminal history, the fact that he was charged back in 2003, and after a year went by, presumably the State is trying to build up its case against Mr. Hager, investigating. Mr. Hager is being psychologically evaluated by a court-appointed psychologist, which Mr. Hager paid for out of his own pocket. And what you have in February of 2004, a year later, you have a discussion. The counsel go into chambers and discuss the case with Judge Warren, who turns out to be the sentencing judge. They actually stipulate to Judge Warren being the sentencing judge. During that conference, Mr. Hager's attorney, Mr. Moore, is told by the judge, after he tells him what the prosecution's offer is, that I'm not going to give this man 18 years. Period. But, you know, the problem for me is, after that, that was very early in the process, and after that there was the full-fledged plea colloquy. Your client was told numerous times you could get up to the maximum. He agreed. He understood. He signed. Everything. And so I would have to say that the State court was unreasonable in looking at all of those statements that your client made and saying it was a knowing and voluntary waiver. Your Honor, first, I respectfully disagree that this was – I mean, this happened in February 2004. February 28th – February 24th, 25th of 2004. Then you have March 12th, I believe, where you have the change of plea hearing, that same year, which is – At which time your client says he understands he could receive 18 years and there have been no promises. Virtually every defendant in a State court is going to say that. I know, but he said it. No, but he did say you're absolutely correct. And how is it that we can say the State court is unreasonable in deciding, based on that, that your client understood that there were no promises and could receive up to 18 years, which is exactly what was said? Now, it may be that that's a rote response, but it is a response, and why can't the State court rely upon it? Well, you could definitely rely upon it, but the question becomes, is that going to be sufficient? And I don't think the answer is – What Supreme Court case says it isn't? Pardon me? What Supreme Court case says that's not sufficient? I mean, that's the problem here, because that's what we're looking at. You don't have to have – AEDPA doesn't require an actual Supreme Court case right on point. No, but it better be pretty darn close, the Supreme Court has told us. I don't think that's what AEDPA requires, Your Honor. What's even in the neighborhood? Well, there's plenty of clearly established law that says if you were told by your counsel one thing, and you rely upon it, and then you enter a guilty plea based on that reliance. At which time you're told something else by the court, and you say you understand that. The court says it's a barrier. The Supreme Court in Blackridge says that's a barrier, but it's not something that can't be overcome. And when you look at the facts of this case, when you look at – just the fact alone that Mr. Hager pled guilty to every single charge alleged against him. Any suggestion there was all this evidence against him is simply not in the record. I mean, the prosecution had one year to amend the information, add additional charges, nothing. They didn't do any of that. So what you have, you have a year that goes by. They're negotiating with one another. They're building cases. You know, Mr. Hager is building his case. The prosecution is building his case. And then they come together. They go to the judge. The judge says, I'm not going to give him 18 years. Now, the judge is not the culpable party here. He's attorney. Mr. Hager's attorney is to blame. Mr. Hager's attorney simply assumes that the judge is not going to send him to 18 years. And what does he do? Isn't that what the judge said? That's exactly what the judge said. On a reasonable basis? I mean – That's correct. Judges are supposed to be trustworthy. Why can't the lawyers rely on that? This is precisely why we're here, Your Honor. The fact that the State authority tells an attorney, 18 years is too much time. I'm not going to take this man's youth away, based on the circumstances of the case. And keep in mind, Your Honor, that a case very similar, with facts much worse than Mr. Hager's case, was before the same court, months before, maybe a month before, where the man, he was a school teacher, raped or molested a foreign exchange student, and he only got three years. And based on all the circumstances, the fact that there weren't any additional charges, there was inconsistencies in testimonies between the prosecution witnesses, to have financial motivations, none of which, by the way, was brought up to the judge's attention at the time of the sentencing. In fact, Mr. Moore, the counsel here, did absolutely nothing. He brought one witness up there in face of all the witnesses that the prosecution brought up at the sentencing. He brought one witness number who basically reiterated or summarized what she had written in the sentencing memorandum. And the big picture may not have done him any positive good. But I'm not sure how that in the end helps you. Because there's nothing that I can look at that really faults the attorney for having accepted what the judge said. And there's nothing I can look at that says your client didn't at least acknowledge the possibility of what was going to happen. Mr. Hager had no prior criminal history. None. And he was in state court. There are murderers that have no prior criminal history and wind up getting the death penalty. That's correct, Your Honor. And the defense is bad. For purposes of determining whether his guilty plea is voluntary, what evidence was against him is simply irrelevant. Number one, we don't even know what the evidence was. It was never determined in the jury trial. He never had an opportunity to cross-examine any of them. But we know what he pled guilty to. Correct. He pled guilty to six counts. Yes. All the counts that were alleged. Caramelization, yes. The fact that he agreed to plead guilty to every single count against him and obtained a maximum sentence, which he would have obtained had he gone to trial anyways, tells you that he was relying on the judge's indicated sentence communicated to him by his own attorney that he was not going to be sentenced to 18 years. The opposing counsel says, well, that there was evidence in the record that the prosecutors could have charged more. And also, I think the other theory was that he, by pleading guilty, had saved the girl from having to testify. And so that there was some evidence that he benefited from the plea agreement. Well, the first one, the prosecution, all we have, the only evidence, if you call it even evidence we have, is the prosecution in February 25th of 2004, a year after Mr. Hagley's charge, in a sentencing, pre-plea sentencing memorandum, telling the court, by the way, we have all these other charges we could be bringing. There's no evidence to it. Nothing supports any of that except the prosecution's word. I mean, I can't imagine a prosecutor having a whole bunch of evidence but not charging it. Oh, yes, you can. Well, not after a year. I mean, just for the purpose of negotiation, they would have said we have more evidence. Then you have the second part of your concern, Your Honor. Sure, Mr. Hagley was concerned about the victim, putting the victim through a trial. There's no question about it. And I think that benefits him. I think it tells you what kind of person he is. I mean, this man was an ex-Marine. He served in Iraq, excuse me, in Kuwait. He served, I think, prior to that in another war. And he molested six children. No, no, he didn't molest six. It was one person, Your Honor. All right. This is, this is, and if you look. You're right, that's a misstatement. But he six times molested a child. But this is the circumstances of the offense, Your Honor. We know that he pled guilty the six times. We don't know how many times he molested. Well, it doesn't, I think, respectfully, Your Honor, number one, it would be pure speculation. I know he admitted to it. You don't have to speculate. I know he admitted to it. I know he admitted to it. But the fact that you admit to something, the fact that there may be overwhelming evidence against you, doesn't change the fact that Mr. Hager's guilty plea was induced improperly by his counsel's false assurances. Period. I mean, it doesn't change that fact. So what do you think our decision should be? I think your decision should give deference to the State Court's determination. There's no question about it on the APA. But there's nothing to really defer to. So you have to sit and think about what could be any reason to support the State's decision. But you have to be fair about that, Your Honor. You can't just rubber stamp, as the Supreme Court has said, a non-issued State Court decision simply because Mr. Hager, the only fact against Mr. Hager here, the only relevant fact against Mr. Hager is that during the change of plea hearing, he admitted. He admitted that there was no prior agreement. There was no. But for all we know, there's plenty of case law out there, backdating to 1970s, that talk about if your attorney tells you one thing, and then – That's a wise thought. Yes, Your Honor. If you'd like for me to stop, I'd be happy to do that, and I'll come back. You're over time as it is, so we'll give you a minute for rebuttal. Thank you, Your Honor. Good morning. May it please the Court, Deputy Attorney General Collette Cavalier for Respondent. Hager pled guilty for six counts of molesting his then 11-year-old stepdaughter, one count per month from the period of January 2002 to June 2002. He now asks this Court to grant relief based on his claim that he was promised by his attorney that he would get a lesser sentence than that that the trial court imposed. His claim is directly contradicted by the State Court record that shows that Hager understood that he could receive up to 18 years in state prison and that the trial court retained discretion to impose a sentence of up to 18 years. In his written plea agreement, he acknowledged that no other promises had been made to him other than what was stated in open court and what was on the plea form. He acknowledged that he could be sentenced to a maximum of 18 years. In the plea colloquy, as you pointed out, he was told no less than three times that he was facing a maximum sentence of 18 years. He agreed again that there were no other verbal or written promises that had been made to him. And that he understood the consequences of his plea. Then the State Court explicitly found that his plea was knowing, intelligent, and voluntary. It's sort of troubling, though. I mean, the facts of the case are different than Blackledge v. Allison, but in some ways they're similar in that the judge made a very definitive statement, his attorney conveyed it to him, and someone who's ignorant of the criminal process thinks, okay, well, you go through this rigmarole, but at the end of the day I won't get an 18-year sentence. That was similar to what the defendant understood in Blackledge. That's true. And if the trial court did make that statement, the question is, could that be construed as a promise that he was going to receive a lesser sentence? In this case, it seems to be just an early inclination before all the facts before the trial judge that the initial inclination was that it was worth something less. But even if that statement that 18 years seems like too much was conveyed to him, it's clear that once he read the plea agreement and was told in court that there was no commitment and there was no binding promise. He knew that he could be facing a term of 18 years. So even if he thought that the judge was probably not going to give him the maximum, the plea colloquy and the plea form agreement itself makes clear that there was still discretion to impose anything up to and including the 18 years. And his own declaration kind of contradicts his explicit statement that he relied on some assurance that he would receive less than 18 years because he talks about how his attorney explained to him that the judge would consider the factors in mitigation and his acceptance and responsibility and consider those factors in choosing the sentence that was appropriate. And also that he was skeptical of signing a plea agreement that contained such, I think he said, vast room for error, which seems to acknowledge that he knew that there was still that vast range between the minimum and the maximum that he could receive. So even if his attorney did represent, which I don't think is clear because the attorney's declaration doesn't say, oh, I told him he wouldn't get the maximum, he just says that he informed him of the conversation in chambers and that Hager's understanding based on that was that he would receive something less than 18 years. It's not as strong as I told him he wouldn't get the maximum. So even that said, he can't show prejudice because he was clearly and explicitly informed at the plea colloquy that he could receive up to 18 years. And he assured the court that he understood that, and he assured the court that there were no other promises made to him. Isn't that similar, though, to Blackledge? I mean, I know Blackledge was in the days before plea agreements were allowed, and so the defendant was instructed, you have to go through this and make these statements. And the Supreme Court said, yes, but under the facts of this case and the secretive nature of plea agreements and their subversive nature, we won't hold him to it, or we'll say there's a due process issue. And that's different than what we have now, since plea agreements are openly recognized and acknowledged that they're explicitly put on the record. And so there was this explicit informing him of what exactly his agreement was, what exactly the commitment was, what exactly their promises were. And he reflected his understanding of that in open court, unlike in Blackledge. Here it's explicitly made clear exactly what he was agreeing to and exactly what he was being promised in return. And he acknowledged that he understood that. But we've got the problem, and the problem in this record is there was some discussion, and the judge did indicate in discussion with his counsel that he was not going to take, quote, this exact language, but he wasn't going to take this person's youth away from him. So the judge could have signaled this attorney that he was going to sentence to less than 18 years on this record. Can't we see that? I can. And if that statement, the statement's too vague to be a promise of anything by the judge. So the question is, what did the attorney tell Mr. Hager, and what did Mr. Hager understand? And what we have is the clearest expression of what he understood is what he agreed to. And what he agreed to was a maximum term of 18 years. And in return, counsel makes much of the fact that he pled guilty to the maximum count and received the maximum term. But this was a very early plea. This was pre-preliminary hearing, pre-taking of any testimony. As the prosecutor pointed out, both in the pre-plea sentencing agreement and in the plea colloquy, he was prepared to add additional charges based on the evidence that was presented in the preliminary. So his current declaration that he would not have pled guilty but for this alleged inducement isn't persuasive in light of the benefits he did get. He preserved the discretion to at least argue his acceptance of responsibility in mitigation and to ask for leniency. He obtained the ability to choose his sentencing judge, and probably most importantly, he was able to avoid charges that would have resulted in much greater exposure. You're right. It is speculative. But that's the nature of the plea bargain. You take the risk of, you know, the benefits, not knowing what might have come out at trial, what evidence might have been presented, what motions might have been successful. And on this record, we've got a situation where he hasn't been before the court before. Right. He should have been, but he hasn't been. Right. But he did stipulate to the probation officer's report as a factual basis of the plea. And in the probation report, it's clear that at least the allegations by the victim span a much greater time period and involve many more acts than merely six acts that he pled guilty to. It appears that it started within a couple of months of the mother's death in November 2000 and continued until her disclosure in January 2003. So, you know, the six charges, one per month, could have been one per month for 24 months rather than one per month for six months. We don't know. And he took the chance that accepting this plea bargain was reasonable based on what he potentially faced should he choose to go through the prelim and face additional charges at trial. So it's not we judge counsel's performance based on what he knew and what he, you know, could reasonably predict based on the stage of the trial that they were at. And as Primo v. Moore makes clear, we give a lot of deference to that because of the nature of the uncertainty and because of the need to give finality to plea bargains and to respect counsel's decision-making at that stage of the proceeding based on what he knew then and not based on what we know now actually did happen. So, you know, maybe both counsel and he hoped for a different or better outcome. They took the chance and he got the maximum. But it was not ineffective of his counsel to advise him to enter into this plea because there were significant benefits to him. In this case, the major stumbling block is his ability to show prejudice because he was correctly informed of the maximum that he could receive. He understood the bargain that he was getting. And the State court's rejection of his claims are not unreasonable and not contrary to any clearly established Federal law. Thank you. You may want to start with our last sentence. Did you hear what you said? Clear established law. Go ahead. Go ahead. Your Honor, the attorney in the declaration says my client and I were stunned in shock, shocked by a sentence handed down by the judge. There's no, there's no, there can't be any suggestion that Mr. Hager or the attorney were not operating under the mistaken assumption that there were going to be, that he was not going to be sentenced to the 18 years. There's no question about that. But what we, what do we, what's it, what's the narrow question before us? The narrow question is given the fact that he went through the change of plea hearing and admitted that there were no promises, is that enough to negate the involuntary, the involuntariness of his plea? And I don't think, under the facts of this case, given the timeline in this case, I don't think there is sufficient, there is sufficient ground to say that the State court has reasonably applied Federal law. You've been around long enough to know what the problem was facing your client at the time. He knew all of the facts, and he had to suspect that the prosecutor either knew or could easily know what facts he knew, and he knew over what period of time he had molested the child. Didn't he? Your Honor. And he knew what the maximum sentence would be. Would be. He just hoped he wouldn't get it. And he based his hope on some conversation his lawyer had had with the judge, and the judge had indicated, at least this record suggests that the judge had indicated, that he was not going to sentence to 18 years. Isn't that the state of the record as we get it? I think with regard to the first, I don't know specifically what my client knew, what the evidence was, what he had done. He knew what he had done. Surely he knew what he had done. He did. I'm not sure what the extent of it is. I'm not sure. What I do know is that the State had one year from February of 2003. They didn't choose to charge him more than they charged him. Why? I mean, I know you should be asking the questions, but I'm wondering why the prosecution It happens all the time. We are going to base this case on what happens all the time. But it's not at all peculiar that the prosecutor charges less than he possibly could. Well, that means that the prosecution only believed that he could prove six counts beyond a reasonable doubt. All right. You can make that conclusion. But what we're going to do is decide it on this bracket, not on what. And I would suggest to the Court to respectfully look at the timeline in this case. Look how things proceeded in this case. For one year. It's a horrible case. It is a horrible case. A person in a position of authority. He was mentally ill, Your Honor. He wasn't assuming everything about him to be true. This case, his sentence wasn't based on the fact that he was mentally ill, was it? Well, there is a report that says that he was operating under the assumption that he transferred his love for his late wife to her daughter. This is a man who married a woman, I believe seven years to his senior, simply because he loved her. He knew that she had cancer when he married her. He stood by her when she died. Pardon me, Your Honor? He knew that she had a daughter when he married her. I think that's pure speculation. I understand what Your Honor is getting at, that he planned. I mean, he was sure that he planned this whole thing out. I'm not suggesting he planned anything, but I'm suggesting that you've got to tell us what would be the rationale if we set this sentence aside. And I guess your theory is he never understood the extent of his plea. And if we did that, we'd have to ignore the colloquy, wouldn't we? You'd have to ignore it given the circumstances around that change of plea. Every single defendant I've seen in state court simply goes up there and the judge tells them, do you agree, you agree, and they say yes. They do it on advice of counsel. They have every right to rely on their counsel. In addition, Your Honor, I think it's a catch-22 here. Either his plea was involuntary or his counsel failed to act properly. His counsel, after the in-chambers discussion here, his counsel did nothing. He did nothing. He had filed all his paperwork before. He just simply went up there and let them pile on him over and over again, never mentioned to the judge. He waited almost four months before he filed a declaration with the court reminding the judge of the in-chambers conference. I think the least he could have done, Your Honor, is simply object to the court or bring it to the court's attention. I think we have your argument. We thank you. We thank both counsel for your helpful arguments. Thank you. The case just argued is submitted.
judges: Farris, Clifton, Ikuta